**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| H&S CLUB OMAHA, INC., | 25-civ-_____ |
| Petitioner, | |
| v. | **PETITION OF H&S CLUB OMAHA, INC. FOR THE DETERMINATION OF REASONABLE FINAL LICENSE FEES** |
| AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, | |
| Respondent. | |

**PETITION OF H&S CLUB OMAHA, INC. FOR THE**
**DETERMINATION OF REASONABLE FINAL LICENSE FEES**

1.      Petitioner H&S Club Omaha, Inc. ("Club Omaha") is a for-profit, Nebraska corporation that is in the adult entertainment business, specifically offering live performances by dancers while recorded music is played. The Respondent in this action is one of the two largest performing rights organizations ("PROs") in the United States: the American Society of Composers, Authors and Publishers ("ASCAP"). The second largest is Broadcast Music, Inc. ("BMI") named as a Defendant in a separate action brought by Plaintiff. Each of ASCAP and BMI are subject to antitrust consent decrees entered in this judicial district stemming from their pooling of interests in vast amounts of copyrighted musical works for which they set prices. Club Omaha files this Petition pursuant to § IX(A), *et seq*., of the ASCAP consent decree, for the determination of reasonable license fees and terms from ASCAP applicable to Club Omaha's use of compositions in those PROs' repertoires (the "Rate Court Petition").

**INTRODUCTION**

2.      Respondent ASCAP entered into a consent decree with the Department of Justice in 1942, which has since been amended. *United States v. ASCAP,* 1940-1943 Trade Cas. ¶ 56,104

1

(S.D.N.Y. 1941), *as amended by* No. 42-245, 1950 WL 42273, at *1 (S.D.N.Y. Mar. 14, 1950) (1950-51 Trade Cas. ¶ 62,595), *as amended by* 1960 Trade Cas. ¶ 69,612 (S.D.N.Y. Jan. 7, 1960), *as amended by* No. 41-1395 (WCC), 2001 WL 1589999, at *1 (S.D.N.Y. June 11, 2001) (the "ASCAP Decree"). The ASCAP Decree sets guidelines for rate and rate setting between ASCAP's conduct and license-seekers and allows license-seekers to petition for a judicial determination of reasonable ASCAP license fees under the ASCAP Decree as set forth herein.

3.      Petitioner Club Omaha is a long time licensee of both ASCAP and BMI for the license to play music from each PRO's respective repertoires. Club Omaha in 2023 recently sought to negotiate new fee licenses with ASCAP and requested rate setting information from ASCAP which was effectively refused. By this Petition, Club Omaha seeks determinations of reasonable license rates and terms against ASCAP for its music. Specifically, Club Omaha seeks reasonable rates and terms from ASCAP for a "General License Agreement," (*i.e.,* "a blanket agreement") for the one year term and renewals thereof. The licenses requested are to allow public performances of all ASCAP-affiliated musical compositions for which an ASCAP license is required for "similarly situated" licenses such as Club Omaha at the licensed premises.

## PARTIES

4.      Club Omaha is a for-profit corporation existing under the laws of Nebraska, with a principal office address of 2607 S. 120th Street, Omaha, Nebraska. Club Omaha is a live performance venue featuring female dancers who dance while recorded music is being played.

5.      ASCAP is an unincorporated membership association operating as a music PRO claiming to license the musical works of more than 850,000 composers, songwriters and

publishers,[1] with its principal office located at 250 West 57th Street, New York City, New York 10107.

## JURISDICTION

6.    This Court has jurisdiction under 28 U.S.C. § 1331 and § 1337 because the proceedings that gave rise to each of the ASCAP Decree and the BMI Decree were brought pursuant to federal antitrust laws. *See, e.g., ASCAP,* 2001 WL 1589999, at *1 ("This Court has jurisdiction of the subject matter hereof and of all parties hereto. The Complaint states a claim upon which relief may be granted against ASCAP under Section 1 of the Sherman Act, 15 U.S.C. § 1."); *see also BMI,* No. 64-Civ-3787, at *1 (noting "[t]his Court has jurisdiction of the subject matter of this action and of the parties . . . under Sections 1 and 2 of the Act of Congress of July 2, 1890").

7.    Under § IX(A) of the ASCAP Decree, this Court has continuing jurisdiction over ASCAP to determine reasonable license fees and terms governing the public performance of musical works in the ASCAP repertory by music users such as Club Omaha. Club Omaha invokes that jurisdiction in seeking a determination of reasonable ASCAP rates and terms for licenses.

8.    Before the Music Modernization Act (Pub. L. 115-264, title I, § 104, Oct. 11, 2018, 132 Stat. 3726) (the "MMA") was enacted in 2018, petitions to determine rates and terms under each of the ASCAP Decree and BMI Decree were required to be filed in the Southern District of New York and referred to the Judge having jurisdiction over the ASCAP Decree and BMI Decree, respectively. In practice, therefore, Judge Denise Cote handled petitions involving ASCAP, and Judge Louis Stanton handled petitions involving BMI.

---

[1] *About Us,* ASCAP, https://www.ascap.com/about-us.

9.      The MMA changed the assignment system for ASCAP and BMI "Rate Court" petitions. Rather than automatically assigning petitions to Judge Cote and Judge Stanton, the new law specifies that each rate court petition "shall be . . . randomly assigned to a judge" in the Southern District of New York. 28 U.S.C. § 137(b). The law further prohibits assigning a petition to "a judge to whom continuing jurisdiction over any performing rights society consent decree is assigned or has previously been assigned" (in other words, Judges Cote and Stanton). *Id.*

10.      In accordance with these MMA provisions, Club Omaha files this Rate Court Petition against ASCAP. Under the MMA, Club Omaha's application cannot be assigned to Judge Cote or Judge Stanton. *Id.* But any other judge is eligible, other than "a judge to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application." *(id.)*

## FACTS PERTINENT TO THE PETITION

11.      For May 15, 2024 to May 14, 2025, for their occupancy total of 286, ASCAP charged Club Omaha $16.69 for the first 75 occupants, $14.77 for the next 75 occupants, $11.82 for the next 100 occupants, and $8.85 for the next 39 occupants, a total of $3,886.90.

12.      Club Omaha has been an ASCAP licensee since May 2019 with the initial term being renewed annually.

13.      ASCAP's current annual "minimum fee" to Club Omaha is $1,285.00 for 2025 with an additional amount due based on "additional occupants."

14.      Petitioner's counsel contacted ASCAP several times prior to filing this action, requesting a reasonable explanation for their posted rates for adult entertainment establishment.

15.      ASCAP has not, to date, proffered any specific explanation for their respective fees charged Club Omaha for the License Terms.

16.     Club Omaha questioned and contested the fee in June 2023 and requested information from ASCAP from which H&S could estimate a "reasonable fee." ASCAP ignored that request.

17.     Club Omaha is unwilling to pay the stated fee for the artificial class of establishment which ASCAP has designated for "adult entertainment." Club Omaha and ASCAP have been unable to reach an agreement concerning reasonable fees for the licenses to the ASCAP repertory requested by Club Omaha. It has been more than 60 days since Club Omaha provided ASCAP with a written request for a reasonable fee for a license under § IX(A) of the ASCAP Decree.

## BACKGROUND

18.     Respondent were investigated by the Department of Justice in the 1930's and in 1942 ASCAP entered into a Consent Decree which has been repeatedly modified, revised and amended the latest as of June 11, 2001, and the Court has maintained continuing jurisdiction.

### A.     The ASCAP Decree

19.     On June 11, 2001, the United States District Court for the Southern District of New York ("SDNY") by Judge William C. Conner, upon motion of the parties to "amend the Amended Final Judgment" on "consent," entered a Second Amended Final Judgment ("SAFJ") against ASCAP in *United States v. American Society of Composers and Publishers*, (Civ. 41-1395).

20.     The ASCAP Second Amended Final Judgment applicable here states in relevant part:

II.     **Definitions**. As used in this Second Amended Final Judgment:

(E)     "Blanket License" means a non-exclusive license that

        authorizes a music user to perform ASCAP music, the fee

for which does not vary depending on the extent to which the music user in fact performs ASCAP music;

. . . .

(R)    "Similarly situated" means music users or licensees in the same industry that perform ASCAP music and that operate similar businesses and use music in similar ways and with similar frequency; factors relevant to determining whether music users or licensees are similarly situated include, but are not limited to, the nature and frequency of musical performances, ASCAP's cost of administering licenses, whether the music users or licensees compete with one another, and the amount and source of the music users' revenue.

. . . .

IV.    **Prohibited Conduct.** ASCAP is hereby enjoined and restrained from:

(A)    Holding, acquiring, licensing, enforcing, or negotiating concerning any foreign or domestic rights in copyrighted musical compositions other than rights of public performance on a non-exclusive basis; provided, however, that ASCAP may collect and distribute royalties for home recording devices and media to the extent such royalty collection is required or authorized by statute;

    (B)     Limiting, restricting, or interfering with the right of any member to issue, directly or through an agent other than a performing rights organization, non-exclusive licenses to music users for rights of public performance;

    (C)     Entering into, recognizing, enforcing or claiming any rights under any license for rights of public performance which discriminates in license fees or other terms and conditions between licensees similarly situated.

. . . .

VI.    **Licensing.** ASCAP is hereby ordered and directed to grant to any music user making a written request therefor a non-exclusive license to perform all of the works in the ASCAP repertory; provided, however, that ASCAP shall not be required to issue a license to any music user that is in material breach or default of any license agreement by failing to pay to ASCAP any license fee that is indisputably owed to ASCAP. ASCAP shall not grant to any music user a license to perform one or more specified works in the ASCAP repertory, unless both the music user and member or members in interest shall have requested ASCAP in writing to do so, or unless ASCAP, at the written request of the prospective music user shall have sent a written notice of the prospective music user's request for a license to each such member at the member's last known address, and such member shall have failed to reply within thirty (30) days thereafter.

. . . .

VIII.  **Genuine Choice.**

(A)    ASCAP shall use its best efforts to avoid any discrimination among the various types of licenses offered to any group of similarly situated music users that would deprive those music users of a genuine choice among the various types of licenses offered, or of the benefits of any of those types of licenses.

. . . .

IX.    **Determination of Reasonable Fees.**

(A)    ASCAP shall, upon receipt of a written request for a license for the right of public performance of any, some or all of the works in the ASCAP repertory, advise the music user in writing of the fee that it deems reasonable for the license requested or the information that it reasonably requires in order to quote a reasonable fee. In the event ASCAP requires such additional information, it shall so advise the music user in writing, and shall advise the music user in writing of the fee that it deems reasonable within sixty (60) days of receiving such information. If the parties are unable to reach agreement within sixty (60) days from the date when the request for a license is received by ASCAP, or within sixty (60) days of ASCAP's request for information, whichever is later, the music user may apply to the Court for a determination of a reasonable fee retroactive to the date of the written request for a license, and AS CAP shall, upon receipt of notice of the filing of such request, promptly give notice of the filing to the Assistant Attorney General in charge of the Antitrust Division.  If the parties are unable to agree upon a reasonable fee within ninety (90) days

from the date when ASCAP advises the music user of the fee that it deems

reasonable or requests additional information from the music user, and if the

music user has not applied to the Court for a determination of a reasonable fee,

ASCAP may apply to the Court for the determination of a reasonable fee

retroactive to the date of a written request for a license and ASCAP shall upon

filing such application promptly give notice of the filing to the Assistant

Attorney General in charge of the Antitrust Division.

(B)    In any such proceeding, the burden of proof shall be on ASCAP to establish the

reasonableness of the fee it seeks except that, where a music user seeks a per-

segment license, the music user shall have the burden of demonstrating that its

performances of music can be tracked and monitored to determine with

reasonable accuracy which segments of the music user's activity are subject to

an ASCAP fee and of demonstrating that the music user's performances of

music can be attributed to segments commonly recognized within the music

user's industry for which a license fee can be assessed.

. . . .

(D)    Should ASCAP not establish that the fee it requested is reasonable, then the

Court shall determine a reasonable fee based upon all the evidence.

(E)   The parties shall have the matter ready for trial by the Court within one year of the

filing of the application unless ASCAP and at least one music user request that

the Court delay the trial for an additional period not to exceed one year. No

other delay shall be granted unless good cause is shown for extending such

schedule. Pending the completion of any such negotiations or proceedings, the music user shall have the right to perform any, some or all of the works in the ASCAP repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provisions of Section IX(F) of this Second Amended Final Judgment, and to the final order or judgment entered by the Court in such proceeding.

21.     This action alleges that ASCAP's business practices described herein deviated substantially from the standards of the Consent Decree to which it agreed.

**B.     ASCAP's Pricing Practices**

22.     ASCAP has created different fees and licensing arrangements with different business categories, including but not limited to restaurants, coffee shops, fitness clubs, hotels, campgrounds, hospitals, bars, nightclubs, and Adult Entertainment Establishments ("AEE").

23.     ASCAP has segregated music playing venues into AEEs and a separate category for restaurants or bars and similar establishments ("RNB") although each uses the exact same licenses in the exact same way.

24.     ASCAP's RBN license has categories for "use of music in your business" and has a category or "Recorded Music" under which there is a subcategory for "Live Music is not used . . . $4.55" per occupant and a further $2.64 if there is an "admission or cover charge."

25.     An "add-on" on the ASCAP RBN menu is "Enhancements to Recorded Music . . . $2.64" per occupant. ASCAP defies "Enhancements" as ". . . added features to recorded music such as, but not limited to, karaoke, DJs, emcees, dancing, shows, acts or games."

26.     Thus an RBN which puts on dancing girls like AEEs will pay approximately 50% of what ASCAP charges to AEEs. Moreover if an RBN venue can accommodate 2000 occupants,

its per occupant charge will be approximately $3.50 per occupant given that ASCAP caps RBNs "occupancy" for license fee calculations at 1,000.

27.    Furthermore, AEEs are charged license fees based on "total allowable occupancy under the local fire or similar regulations" while RBNs "occupancy" for rater purposes in capped at 1,000.

28.    Thus AEEs' "occupancy" is not capped for rate purposes. Accordingly an AEE with 2000 person occupancy can pay an average of $14.00 per while an RBN can pay $1.72 per.

29.    Thus, RBNs are offered rates per occupant as low as $1.72 per occupant, one-tenth of AEEs.

30.    There appears to be no economic justification for the disparate pricing of AEE and RBN licenses by ASCAP.

31.    Music licensing company GMR charges adult entertainment clubs $8 per occupant and nightclubs $9 per occupant.

32.    The fourth music licensing company SESAC does not have a separate "adult entertainment" category in their rate formulation which is based upon occupancy, hours of operation, and cover charge.

33.    Petitioner and all AEEs are billed on a scale at much higher rates than other businesses including RNBs by ASCAP.

34.    ASCAP charges Petitioner a higher music licensing fee than any other business or industry.

35.    H&S requested that ASCAP explain the basis for the license fee to H&S because the Amended Judgment provides as follows:

(G) When a reasonable fee has been determined by the Court, ASCAP shall be required to offer a license at a comparable fee to al other similarly situated music users who shall thereafter request a license of ASCAP; provided, however, that any license agreement that has been executed between ASCAP and another similarly situated music user prior to such determination by the Court shall not be deemed to be in any way affected or altered by such determination for the term of such license agreement.

36.    Thus it was relevant for H&S to know if the fees for blanket licenses for AEEs had ever "been determined by the Court."

37.    Petitioner is entitled to have a reasonable rate set by this Court. ASCAP shall have the burden of proof to establish the reasonableness of the fee requested by it. ASCAP Decree, § IX(B). If ASCAP does "not establish that the fee requested by it is a reasonable one, then the Court shall determine a reasonable fee based upon all the evidence." ASCAP Decree, § IX(D).

38.    To determine a reasonable fee, a court must "determine the fair market value of a blanket license for the public performance of music." *In re Pandora Media, Inc.,* 6 F. Supp. 3d 317, 353 (S.D.N.Y. 2014), *aff'd* 785 F.3d 73 (2d Cir. 2015). "In so doing, the rate-setting court must take into account the fact that [the PROs], as a monopolist, exercises market-distorting power in negotiations for the use of its music." *Id.* Because "there is no competitive market in music rights," fair market value is a "hypothetical" matter. *ASCAP v. Showtime/The Movie Channel,* 912 F.2d 563, 577 (2d Cir. 1990). But here there is a "fair market value" benchmark in the form of license fees charged to similar establishments such as petitioners, which are not however, artificially categorized as "adult entertainment."

39.    Club Omaha further requests that the fees set by the Court be made retroactive to May 15, 2018, pursuant to § IX(A) of the ASCAP Decree.

WHEREFORE, Club Omaha requests that the Court determine reasonable final fees and terms for music licenses now held by Club Omaha and such other and further relief which may be appropriate.

Petitioner demands a trial by jury of all issues so triable.

Dated:  November 24, 2025

**SQUITIERI & FEARON, LLP**

By: */s/ Lee Squitieri*
          Lee Squitieri
205 Hudson Street, 7th Floor
New York, New York 10013
(212) 421-6492
lee@sfclasslaw.com

**EVAN SPENCER LAW, PLLC**
Evan Spencer
305 Broadway, 7th Floor
New York, New York 10007
(917) 547-4665
Evan@evanspencerlaw.com

Attorneys for Petitioner